IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIPS MEDICAL CAPITAL, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>MEDICAL INSIGHTS DIAGNOSTICS CENTERS, INC., et al.,<br><br>       Defendants.<br>_____/<br>AND RELATED CROSS COMPLAINT<br>_____/ | No. C 06-04470 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

Now before the Court are the motions to dismiss filed by Third-Party Defendant Philips Medical Systems North America, a division of Philips Electronics North America, Inc. ("PMSNA") and by Cross-Defendant Phillips Medical Capital, LLC ("PMC"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby grants in part and denies in part the motions to dismiss by PMSNA and PMC.[1]

## BACKGROUND

This action arises out of the sale and/or lease of medical equipment to Cross-Complainant and Third-Party Plaintiff Medical Insights Diagnostic Centers, Inc. ("MIDC"). PMC filed a complaint against MIDC and Virgil L Williams, John A. Lynch, Arthur T. Gronner, as an individual and as a Trustee of the Arthur T. and Bonnie S. Gronner Trust Dated December

---

[1] The Court denies the parties' requests for judicial notice because the documents contained therein were not necessary to the determination of the motions to dismiss.

9, 1993, and Arthur T. and Bonnie S. Gronner Trust Dated December 9, 1993 ("Gronner Trust") (collectively referred to as "Counter-Claimants") in the Superior Court of California in the County of Contra Costa. In essence, PMC alleges that Counter-Claimants and Third-Party Plaintiffs breached a Master Lease Agreement ("MLA") and the attached schedules by failing to make payments for the medical equipment.

Counter-Claimants filed a cross-complaint against PMC and a third party complaint against PMSNA. PMSNA then removed the action to this Court. On August 18, 2006, Counter-Claimants filed amended complaints against PMC and PMSNA ("Amended Complaint").

Counter-Claimants allege that PSMNA and PMC are joint-venture partners and that PMSNA has a substantial and controlling business interest in PMC. (Amended Compl., ¶ 9.) Counter-Claimants further allege that PMC only provides financing for PMSNA's customers. (*Id.*, ¶ 10.)

MIDC is a diagnostic center to which patients are referred by health care providers for magnetic resonance imaging ("MRI") scans and other diagnostic procedures. (Amended Compl., ¶ 11.) Starting in early 2002, Dr. Williams began discussing options with PSMNA for purchasing an MRI machine for MIDC. (*Id.*, ¶ 12.) In March 2003, MIDC signed an order for an Infinion 1.5T machine. (*Id.*, ¶ 15.) For the next several months, MIDC and Debbie Flatt, on behalf of PSMNA, discussed financing options. MIDC explained that it wanted to finance the purchase the MRI machine in such a manner that it would be the owner of the machine after a period of time. (*Id.*, ¶ 16.) Ms. Flatt introduced MIDC to PMC, which she stated was the "finance arm" of PMSNA and implied that PMC was "inside" or "in house" financing for PMSNA. (*Id.*) Counter-Claimants allege that Ms. Flatt referred to Grant Buckman, who Counter-Claimants believe is an employee of PMC, as PSMNA's leasing person. (*Id.*)

Mr. Buckman then represented to MIDC that PMC was the "dedicated finance arm" of PMSNA. (*Id.*, ¶ 28.) He also referred to PMSNA as "our Medical Division," and Eric Price of PMC referred to PMNSA's sales personnel as "our Field Sales Rep." (*Id.*) When told that PMC was claiming it was a entity separate from PMSNA, Mark Reinstein, a PMSNA employee,

2

responded, "That's ridiculous. They are one and the same." (*Id.*, ¶ 36.) Counter-Claimants further allege:

> There exists, and at all times herein mentioned there existed, a unity of interest and ownership between ... PMC and PMSNA such that any individuality and separateness between [PMC] and [PMSNA] have ceased, and ... PMC is the alter ego of ... PMSNA in that PMC is a joint venture formed by PMSNA and foreign banking entity for the sole purpose of providing financing to customers of PMSNA, that PMSNA and its party corporation market PMC as the financing division of PMSNA, and that PMNSA represents to its customers that PMSNA and PMC are part of the same entity.

(*Id.*, ¶ 55.)

In August and September of 2003, MIDC decided to finance the Infinion 1.5T through PMC and informed PMC that it ultimately wanted to own the machine outright. (*Id.*, ¶ 18.) However, the Infinion 1.5T stopped being manufactured. PMSNA suggested that MIDC use the Panorama 0.6T model instead. (*Id.*, ¶ 20.) In November 2003, PMSNA provided written materials describing the Panorama 0.6T, which Counter-Claimants contend became express warranties. (*Id.*, ¶ 21.)

In December 2003, MIDC decided to purchase the Panorama 0.6T and cancelled the order for the Infinion 1.5T. (*Id.*, ¶ 22.) Counter-Claimants allege that PMSNA made several representations, both orally and in writing, regarding the Panorama 0.6T which MIDC relied on in deciding to purchase this MRI machine. These alleged representations included promises regarding "SENSE" technology, which would have made the MRI machine faster and would have enabled MIDC to process more patients, and "cardiac gating," meaning that the machine was supposed to be capable of taking images between heartbeats. (*Id.*, ¶¶ 23, 25-26, 28.) According to Counter-Claimants, PMSNA agreed to finance MIDC's acquisition of the Panorama 0.6T and MIDC then received correspondence from PMC. (*Id.*, ¶ 28.) MIDC entered into a document entitled "Master Lease Agreement" ("MLA"), and Dr. Williams, Mr. Lynch and Mr. Gronner signed guarantees regarding the equipment. (*Id.*, ¶¶ 34, 35; *Id.*, Ex. 4.)

Counter-Claimants allege that PMSNA and PMC intentionally led MIDC to believe that they were one entity in order to defraud MIDC and deprive MIDC of warranties. PMSNA and PMC intended to create a finance lease whereby PMSNA would sell the Panorama 0.6T to PMC

without any warranties and PMC would in turn lease or sell the MRI machine to MIDC. Through the finance lease, MIDC would only be entitled to any warranties provided by PSMNA to PMC, and MIDC would be obligated to pay PMC regardless of whether the Panorama 0.6T performed as promised to it. (*Id*., ¶¶ 29, 31.) Counter-Claimants dispute that the transaction regarding the Panorama 0.6T was actually a finance lease. (*Id*., ¶¶ 30, 34.)

Installation of the equipment began in October and November 2004. (*Id*., ¶ 43.) Counter-claimants allege that PMSNA's and PMC's plan to defraud MIDC included delaying delivery of critical parts of the MRI machine and coercing MIDC into prematurely signing purported acceptances of the goods. Thus, Counter-Claimants contend that MIDC did not have a meaningful opportunity to inspect the equipment before it was forced to sign the purported "acceptances." (*Id*., ¶¶ 33, 43, 44.)

According to Counter-Claimants, the equipment never functioned properly. MIDC did not receive the SENSE coils, or the training to use them, until six months after the "MRI magnet" was delivered, and the SENSE technology did not work with the Panorama 0.6T. (*Id*., ¶ 45.) Moreover, Counter-Claimants contend that the Panorama 0.6T was never able perform cardiac gating. (*Id*., ¶ 46.) Counter-Claimants also allege that there were other problems with the MRI equipment. (*Id*.) PMSNA's technicians repeatedly assured MIDC that the defects would be cured. (*Id*., ¶ 49.) Nevertheless, Counter-Claimants contend that despite PMSNA's attempts over a year and a half to cure the defects with the equipment, the problems with the SENSE technology, the cardiac gating, and other vascular imaging have never been fixed. (*Id*., ¶¶ 47, 53, 54.) Counter-Claimants allege that PMC's and PMSNA's assurances and coercion, as well as the nature of the defects, the unavailability of some of the equipment, and the complexity of the equipment, prevented MIDC from discovering the defects. (*Id*., ¶ 49.)

On June 13, 2006, when it became clear to MIDC that PMSNA's attempts to cure the defects had not, and would not, be successful, MIDC formally rejected the goods and/or revoked the prior putative acceptances of the goods. (*Id*., ¶ 54.)

Attached to the Amended Complaint are three different quotes from PMSNA and the MLA. (*Id*., Exs. 1-4.) The first quotation attached ("Quotation No.1), was signed by MIDC on

4

May 9, 2004. (Amended Compl., Ex. 1 ("Quotation No. 1") at 13.) Quotation No. 1 provides that it is effective from May 9, 2004 to June 23, 2004. (Amended Compl., Ex. 1 at 1.) It states that "By signing this quotation and/or the Purchase Order/Orders against this quote, the Customer acknowledges no other contracts, fee payments to third parties or terms and conditions will apply to the solutions, good, and/or services contained within this quote." Quotation No. 1 was for a Panorama MR 0.6T for $1,364,010. (*Id*. at 2.) Quotation No. 1 describes the Paraorama 0.6T in detail. (*Id*. at 3-12.) Quotation No. 1 provides that the Paraorama 0.6T is covered under 12 months warranty and includes two pages of "Terms and Conditions of Sale" which include, *inter alia*:

> Leases: In the event the Customer desires to convert the purchase of any product to a lease, the Customer will arrange for the lease agreement and all other related documentation to be reviewed and approved by [PMSNA] ... The Customer is responsible to convert the transaction to a lease, and is required to secure the leasing company's approval of all the terms and conditions in this quotation without modification. No product will be delivered to the Customer until [PMSNA] has received copies of the fully executed lease documents and has approved the same.
> ...
> Product Warranty. Phillips provides specific product warranties with respect to each [PMSNA] product. Copies of the product warranty applicable to the products listed on the face or above pages of this quotation are attached. The warranty period begins at the completion of installation or first patient use, whichever occurs first...
> [PMSNA's] obligations under any product warranty are limited, at [PMSNA]'s option, to the repair or the replacement of the product or a portion thereof, or to a refund of the purchase price paid by the Customer. ... Any product warranty is made on condition that [PMSNA] receives written notice of a product defect during the warranty period, and within thirty days following the discovery of the defect by the Customer. ...
> THE WARRANTIES SET FOR IN [PMSNA'S] WARRANTY DOCUMENT WITH RESPECT TO A PRODUCT ... ARE THE ONLY WARRANTIES MADE BY [PMSNA] IN CONNECTION WITH THE PRODUCT ... AND THE TRANSACTIONS CONTEMPLATED BY THIS QUOTATION, AND ARE EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(*Id*. at 3, 14.)

Attached as Exhibit 2 to the Amended Complaint is another quotation regarding the Panorama 0.6T. (Amended Compl., Ex. 2 ("Quotation No. 2").) Quotation No. 2 provides that it is effective from August 14, 2003 to September 28, 2003. It was not signed by MIDC. (*Id*.) Exhibit 3 to the Amended Complaint is another quotation regarding the Panorama 0.6T,

5

effective from December 11, 2003 to January 25, 2004. (Amended Compl., Ex. 3 ("Quotation No. 3").) The purchase price in Quotation No. 3 is $1,382,901. (*Id*. at 1.) It was signed by MIDC on December 29, 2003. (*Id*. at 11.) Similar to Quotation No. 1, Quotation No. 3 provides that the warranty period is twelve months, includes a detailed description of the product, and two pages of "Terms and Conditions of Sale" with the same lease and product warranty provisions. (*Id*. at 2-10, 13.)

The MLA states that it is between PMC and MIDC and is dated December 26, 2003. (*Id*., Ex. 4 at 1.) The MLA provides that a Lease entered into pursuant to the MLA

> may not be terminated or cancelled for any reason whatsoever, except as expressly provided in the Lease. ... [MIDC's] OBLIGATION TO MAKE THE PAYMENTS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE CLAIMS AGAINST THE [PMC] OR THE PROVIDER OF A SYSTEM. ...

(*Id*.) The MLA also contains the following disclaimer of warranty:

> DISCLAIMER OF WARRANTY: [MIDC] ACKNOWLEDGES THAT [PMC] HAS NO EXPERTISE OR SPECIAL FAMILIARITY ABOUT OR WITH RESPECT TO THE SYSTEM. [MIDC] AGREES THAT THE SYSTEM LEASED HEREUNDER IS LEASED "AS-IS" AND IS OF A SIZE, DESIGN AND CAPACITY SELECTED BY [MIDC] AND IS SUITABLE FOR [MIDC]'S PURPOSES AND THAT [PMC] HAS MADE NO REPRESENTATIONS OR WARRANTY WITH RESPECT THERETO, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. [PMC] FURTHER DISCLAIMS ANY LIABILITY FOR LOSS, DAMAGE OR INJURY TO [MIDC] OR THIRD PARTIES AS A RESULT OF ANY DEFECTS, LATENT OR OTHERWISE, IN THE SYSTEM WHETHER ARISING FROM APPLICATION OF THE LAWS OF STRICT LIABILITY OR OTHERWISE. WITHOUT LIMITING THE FOREGOING, [MIDC] HEREBY WAIVES ANY WARRANTIES CONTAINED IN SECTIONS 2A-210, 2A-211 AND 2A-213 OF THE APPLICABLE UNIFORM COMMERCIAL CODE ....

(*Id*, Ex. 4 at 2.) Attached to the MLA are several schedules. One is for VitalWorks PACS/RIS and states that VitalWorks Inc. is the provider. (*Id*., Ex. 4a at 2 ("Master Lease Schedule No. 1").) PMSNA is the provider for the other attached schedules, which were for the Panorama 0.6T (*Id*., Ex. 4a at 4 (Master Lease Schedule No. 2"), tenant improvements (*Id*., Ex. 4a at 7 (Master Lease Schedule No. 3"), and items of equipment, software and maintenance (*Id*., Ex. 4a at 10 (Master Lease Schedule No. 4").

6

MIDC asserts the following fourteen causes of action against PMSNA and PMC: (1) Breach of Express Warranty; (2) Breach of Implied Warranty; (3) Breach of Contract; (4) Breach of the Covenant of Good Faith and Fair Dealing; (5) Promissory Estoppel; (6) Fraud and Concealment; (7) Negligent Misrepresentation; (8) Unfair, Unlawful and Fraudulent Business Act and Practice; (9) Interference with Contract and Prospective Business Advantage; (10) Civil Conspiracy; (11) Fraudulent Inducement; (12) Reformation; (13) Rescission; and (14) Declaratory Relief. MIDC also asserts a cause of action against PMC for "Money Had and Received." (Amended. Compl.)

PMSNA and PMC now move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court will address the additional specific facts as required in the analysis.

## ANALYSIS

**A.     Legal Standards on a Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, while as a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," the Court may consider documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994),

7

*overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted); *see also Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th Cir. 1989).

**B.    Defendants' Motions to Dismiss.**

PMSNA argues that the claims against it are based on the quotes attached to the Amended Complaint, which include a choice of law provision providing that New York law applies. PMS contends that the claims against it are premised on the MLA which contains a Pennsylvania choice of law provision. MIDC contends that it is too early to determine whether New York, Pennsylvania, or California law applies. It is not yet clear whether MIDC's claims are premised on written, oral or implied contracts, and thus, the Court agrees that it is too early to determine what law governs MIDC's claims. Accordingly, to the extent applicable and appropriate, the Court will analyze the sufficiency of MIDC's claims under New York, Pennsylvania, and California law.

**1.    Claims for Breach of Contract, Express and Implied Warranties.**

Counter-Claimants allege that MIDC formed a contract with PMSNA and PMC to purchase the Panorama 0.6T and that they breached by failing to provide goods in conformity with the warranted specifications. (Amended Compl., ¶¶ 70-71.) PMSNA and PMC each contend that their contracts with MIDC are governed by the quotes and the MLA, respectively, and that each document disclaims any warranty. According to PMSNA, it sold the equipment to PMC, which in turn, leased the equipment to MIDC. PMSNA thus argues that MIDC's contract claims are governed by the MLA between MIDC and PMC, which disclaims any warranties. To the extent any warranties survive the MLA, PMSNA argues that any warranty or contract claims based on such warranties are barred by the one-year statute of limitations set forth in the quotes and by MIDC's failure to satisfy the condition precedent of providing written notice. (PMSNA's Mot. at 1-2.) PMC argues that all warranties were expressly disclaimed in the MLA. (PMC's Mot. at 3.)

The Court cannot determine as a matter of law at this procedural stage whether the contracts between MIDC and PMSNA and between MIDC and PMC are governed by the

8

quotes, the MLA, some combination of the two, or whether the terms within these documents may be enforced. Notably, Counter-Claimants allege that the contracts are void because they were procured by fraud. If true, neither PMSNA nor PMC would be entitled to avoid liability based on any disclaimers of warranties within these documents. Accordingly, the Court denies both PMSNA's and PMC's motions to dismiss as to Counter-Claimants' breach of contract, breach of express warranty, and breach of implied warranty claims.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing Claim.

PMSNA and PMC both argue that the while every contract contains an obligation to perform in good faith, Counter-Claimants cannot bring a separate cause of action for breach of the implied covenant of good faith and fair dealing. (PMSNA Mot. at 11; PMC Mot. at 16.) Counter-Claimants concede that if their breach of contract claim is not dismissed, they cannot bring a separate cause of action for breach of the implied covenant of good faith and fair dealing. (Opp. to PMSNA's Mot. at 19-20; Opp. to PMC's Mot. at 19-20.) Based on Counter-Claimants' concession, the Court grants PMSNA's and PMC's motion as to the breach of the implied covenant of good faith and fair dealing claim.

### 3. Promissory Estoppel Claim.

Both PMSNA and PMC argue that Counter-Claimants claim for promissory estoppel should be dismissed on the basis that such a claim requires extracontractual statements, as opposed to promises bargained for and contained within a contract. Under California law, promissory estoppel "make[s] a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249-50 (1969). As the California Supreme Court explained:

> "Under such circumstances, the only reliance which can make the promisor's failure to perform actionable is the promisee's doing what was requested. If that reliance was detrimental, it would constitute consideration. If it was not detrimental, it would not constitute consideration; and since detrimental reliance is an essential feature of promissory estoppel, that doctrine could not be invoked to make the promisor liable.... In other words, when the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance

9

> was unbargained for that there is room for application of the doctrine of promissory estoppel.

*Healy v. Brewster,* 59 Cal.2d 455, 463 (1963); *see also Walker v. KFC Corp.*, 728 F.2d 1215, 1219 (1984) (rejecting plaintiffs' argument that their acts in reliance of the alleged promises were not bargained for because the plaintiffs' claim of reliance was founded on the very acts which induced the defendant to enter into the written agreements); *Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.*, 723 F.Supp. 976, 993 (S.D.N.Y.,1989) ("Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract."); *Synesiou v. Designtomarket, Inc.,* 2002 WL 501494, at *4 (E.D.Pa. Apr.3, 2002) ("[P]romissory estoppel has no application when parties have entered into an enforceable agreement.").

At the hearing on the motions to dismiss, Counter-Claimants clarified that their allegations in support of their promissory estoppel claim relate to alleged promises by PMSNA and PMC to work together to promote MIDC's business and to engage in marketing efforts on behalf of MIDC. (Amended Compl., ¶ 82.) Counter-Claimants do not appear to allege that such promises were contained within the contract(s) with PMSNA and PMC. Nevertheless, the Court notes that Counter-Claimants also allege that they relied on the promises and entered into the MLA and personal guaranties and expended significant sums in creating the premises for the MRI equipment as a result of such reliance. (Amended Compl., ¶ 84.) However, at this procedural stage, the Court need not determine whether such alleged promises were part of the alleged contracts because, as discussed above, Counter-Claimants also contend that the contracts were void or voidable based on fraud. Thus, the Court denies PMSNA's and PMC's motions to dismiss as to the claim for promissory estoppel.

**4.    Fraud Claims.**

PMSNA contends that Counter-Claimants fail to plead their claims for fraud and concealment, civil conspiracy to defraud, and fraudulent inducement with sufficient particularity under Federal Rule of Civil Procedure 9(b) ("Rule 9"). Rule 9 provides that: "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity." A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so a defendant can prepare an adequate answer from the allegations. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). A plaintiff must set forth a specific description of the representations made and explain why they are false and misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Here, Counter-Claimants have sufficiently alleged the substance of the alleged misrepresentations, who made them, and the approximate time frame as to when they were made. Although the Court is not clear whether Counter-Claimants will be able to demonstrate that they suffered any injury as a result of such alleged fraud, or that there is a causal link between their alleged injury and the alleged fraud, because Counter-Claimants sufficiently *allege* these elements, the Court denies PMSNA's motion to dismiss on this ground.[2]

PMC argues that the fraud claims are barred because they are based on alleged misrepresentations made prior to the execution of a fully integrated written contract. Accordingly to PMC, under Pennsylvania law, such evidence would be barred by the parol evidence rule. (PMC's Mot. at 15.) However, even if this were an accurate representation of Pennsylvania law, under California law, parol evidence would be admissible to demonstrate the alleged fraudulent inducement. *Hinesley v. Oakshade Town Center*, 135 Cal. App. 4th 289, 301 (2005). As the court explained in *Hinesley*, "Fraud in the inducement renders the entire contract voidable, including any provision in the contract providing the written contract is, for example, the sole agreement of the parties, that it contains their entire agreement and that there are no oral representations (integration/ no oral representations clause)." *Id*. Because it is not yet clear whether Pennsylvania law applies, the Court will not grant PMC's motion on this ground.

PMC also moves to dismiss Counter-Claimants' fraud claims, as well as all of their other tort claims, pursuant to the "gist of the action" doctrine under Pennsylvania law, which bars contract claims from being recast as tort claims. (PMC's Mot. at 12-15.) However, as stated

---

[2] PMSNA summarily argues that "because [Counter-Claimant's] fraud claims fail, any claim for rescission fails as well." (PMSNA Mot. at 15.) Because the Court denies PMSNA's motion as to the fraud claims, the Court thus denies its motion as to the rescission claim as well.

11

above, it is not clear yet whether Pennsylvania law applies. PMC argues that Pennsylvania law applies based on the choice of law provision in the MLA. If, as Counter-Claimants allege, the MLA is void based on fraud, then the choice of law provision contained within the MLS would be void as well. As stated above, because it is not yet clear whether Pennsylvania law applies, the Court denies PMC's motion to dismiss on this ground.

### 5. Civil Conspiracy Claim.

PMSNA argues, without citing any supporting authority, that the conspiracy claim should be dismissed because there is no separate tort for civil conspiracy under California law. (PMSNA's Mot. at 15.) In a recent case, the California Supreme Court stated that the elements of a civil conspiracy claim are the "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1062 (2006). If there were no claim for civil conspiracy, there would be no need to provide any elements of a such a claim. Accordingly, the Court denies PMSNA's motion to dismiss the civil conspiracy claim under California law. Because it yet clear whether New York law applies, even if Counter-Claimants' civil conspiracy claim would be insufficient under New York law, the Court will not grant PMSNA's motion on this basis either.

### 6. California Business & Professions Code § 17200 Claim.

California's Unfair Competition Law, California Business & Professions Code § 17200 ("17200"), establishes three varieties of unfair competition – acts or practices that are unlawful or unfair or fraudulent. Because the law is stated in the disjunctive, it contemplates three distinct categories of unfair competition and a plaintiff must plead the specific rubric under which the proscribed conduct falls. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (Cal. 1999). PMC moves to dismiss this claim on the grounds that Counter-Claimants fail to allege sufficient facts to meet any of these three varieties.

In response, Counter-Claimants argue that they sufficiently alleged "unfair" practices. (Opp. to PMC Mot. at 21-22.) When "a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that

12

section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (Cal. 1999). Counter-Claimants have not alleged any facts which would establish an antitrust injury or violation. Accordingly, the Court is dismissing Counter-Claimants' 17200 claim with leave to amend.[3]

### 7. Interference With Contract and Prospective Business Advantage Claim.

Both PMSNA and PMC move to dismiss Counter-Claimants' tenth claim for interference with contract and prospective business advantage on the grounds that Counter-Claimants fail to plead facts establishing the essential elements of such claims. To state a claim for interference with contractual relations, a plaintiff must allege "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990). To state a claim for interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Pacific Gas & Electric Co.*, 50 Cal.3d at 1126 n.2.

In opposition to the motions to dismiss, Counter-Claimants do not make any attempt to show where in the Amended Complaint they allege facts to support these claims. (Opp. to

---

[3] PMSNA moved to dismiss Counter-Claimant's 17200 claim on different grounds, *i.e.*, that Counter-Claimants failed to allege an "injury in fact" or that they are entitled to a remedy against PMSNA. Counter-Claimants failed to respond to these arguments. Nevertheless, because the Court finds that Counter-Claimant's failed to allege a 17200 claim for the reason stated above, the Court need to not address whether this claim fails for the additional reasons argued by PMSNA.

13

PMSNA's Mot. at 21-22; Opp. to PMC's Mot. at 21.) Upon reviewing the Amended Complaint, the Court did not find any allegations which set forth the existence of any contracts with third parties or any economic relationships between MIDC and some third party, with the probability of future economic benefit to MIDC, that were harmed by PMSNA's or PMC's conduct. Rather, Counter-Claimants allege conclusory language that merely repeats the elements of these torts. Such conclusory allegations are insufficient to state these claims. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) ("the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citation omitted). Accordingly, the Court dismisses Counter-Claimants' tenth claim, but will provide leave to amend.

**8.     Reformation.**

Both PMSNA and PMC argue that Counter-Claimants fail to sufficiently allege the elements necessary to state a claim for reformation. To state a claim for reformation under California law, a plaintiff must plead that "by reason of fraud practiced by one of the parties, or of the mutual mistake of the parties or of a mistake of one of them, which the other at the time knew or suspected, there were omitted from the instrument certain material terms and conditions. In other words, that the language of the writing failed, for some reason, to express the intention of the parties." *Pascoe v. Morrison*, 219 Cal. 54, 56 (1933); *Lane v. Davis*, Cal. App. 2d 302, 309 (1959) ("A complaint for the reformation of a contract should allege what the real agreement was, what the agreement as reduced to writing was, and where the writing fails to embody the real agreement. It is also necessary to aver facts showing how the mistake was made, whose mistake it was, and what brought it about, so that mutuality may appear.") (citation and quotations omitted).

In response, Counter-Claimants argue that "MIDC asserts that certain provisions in the contracts do not truly express the intentions of the parties. Specifically, reference is made to

14

provisions in the MLA which purport to be disclaimers of warranty, limitations of remedy, charges and fees which do not comport with the parties' mutual intent." (Opp. to PMSNA's Mot. at 22; Opp. to PMC's Mot. at 20-21.) In their Amended Complaint, Counter-Claimants merely allege generally that the contracts "contain release language ..., disclaimers of warranty, limitations of remedy, charges, and fees which do not comport with the parties' mutual intent." (Amended Compl., ¶ 122.) They fail to allege how the writings failed to express the intention of the parties and whether it was by fraud, by mutual mistake, or by unilateral mistake that was known or suspected by PMC and PMSNA. Moreover, Counter-Claimants fail to allege what the material terms and conditions were to which the parties allegedly did agree.

It does not seem likely, if given leave to amend, Counter-Claimants could plead the facts necessary to support a claim for reformation. "Basic to a cause of action for reformation is a showing of a definite intention or agreement on which the minds of the parties had met which pre-existed and conflicted with the instrument in question." *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 21 (1989) (internal quotes and citation omitted). Counter-Claimants plead that PMC and PMSNA intentionally conspired to defraud MIDC of any warranties. It is not clear how Counter-Claimants could plead sufficient facts demonstrating the parties' mutual intent regarding "release language ..., disclaimers of warranty, limitations of remedy, charges, and fees" that would not conflict with the existing facts plead within the Amended Complaint. Nevertheless, the Court will give Counter-Claimants one more opportunity to plead sufficient facts to support a claim for reformation.

**9.     Money Had and Received Claim.**

PMC moves to dismiss Counter-Claimants' claim for money had and received on the grounds that this claim "is a cause of action on implied contract" and thus, cannot be stated when, as here, a plaintiff alleges an express contract. PMC relies on *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996), which stated: "[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." Although Counter-Claimants may not ultimately prevail on their claim for money had

15

and received if, it turns out, there is a valid express contract between the parties, Counter-Claimants may plead in the alternative. They argue that if it is determined that there is no valid written contract between the parties, then the money paid would be pursuant to an implied contract. (Opp. to PMC Mot. at 22.) At this procedural stage, it would not be proper to preclude Counter-Claimants from pleading in the alternative. Accordingly, the Court denies PMC's motion on this ground as to the claim for money had and received.

### 10. Declaratory Relief.

PMC argues that Counter-Claimants' claim for declaratory relief should be dismissed because it merely raises the same issues addressed by their other claims and because they are only seeking redress for past wrongs. (PMC Mot. at 25.) PMSNA similarly moves to dismiss this claim on the grounds that it simply reframes Counter-Claimants' other claims. Declaratory relief is inappropriate where other adequate remedies are available to redress past conduct. *See Harara v. ConocoPhillips Co.*, 377 F. Supp. 2d 779, 796 n.21 (N.D. Cal. 2005); *see also Hunter v. Gates*, 2001 WL 837697, *1 (C.D. Cal. April 16, 2001) (dismissing declaratory relief claim where plaintiff's action was for damages was based on the defendants' past conduct); *Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 407 (1978) ("there is no basis for declaratory relief where only past wrongs are involved." Moreover, a court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties. *See Schlessler v. Keck*, 125 Cal. App. 2d 827, 837 (1954); *see also Taggart v. Rantz*, 2006 WL 3387284, *4 (D.Mont. Nov. 21, 2006). Counter-Claimants do not respond to these arguments or otherwise demonstrate that their declaratory relief claim is proper. Accordingly, the Court dismisses Counter-Claimants' claim for declaratory relief.

### 11. Claims by Gronner Trust.

PMSNA argues that any claims asserted by the Gronner Trust fail because a trust has no capacity to sue. Counter-Claimants concede that "PMSNA correctly states the law." (Opp. to PMSNA's Mot. at 22.) Accordingly, the Court dismisses all claims to the extent they are asserted by Gronner Trust.

**12.    Alter Ego and Joint Venture Allegations.**

Finally, PMSNA argues that Counter-Claimants incorrectly move under two inapplicable theories, namely that PMC and PMSNA have an alter ego relationship and that they are joint venturers.  However, PMSNA is not moving to dismiss a specific claim on this ground, and thus, the Court declines to address whether or not these theories are valid pursuant to PMSNA's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART PMC's and PMSNA's motions to dismiss as follows:

(1)    The Court DENIES the motions as to Counter-Claimants' first, second, third, fourth, sixth, seventh, eighth, eleventh, twelfth, and fourteenth claims;

(2)    The Court GRANTS the motions as to Counter-Claimants' fifth and fifteenth claims and as to all claims to the extent they were asserted by the Gronner Trust without leave to amend; and

(3)    The Court GRANTS the motions as to Counter-Claimants' ninth, tenth, and thirteenth claims with leave to amend.

Counter-Claimants shall file any amended complaint in accordance with the terms of this Order by no later than February 9, 2007.  If an amended complaint is filed, PMC and PMSNA shall either file an answer or move to dismiss within twenty days of service of the amended complaint.  If Counter-Claimants do not file an amended complaint, PMC and PMSNA shall file an answer within twenty days after Counter-Claimants' time to file an amended complaint has expired.

**IT IS SO ORDERED.**

Dated: January 26, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE